**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| HOWARD HAWK WILLIS, | ) | |
| | ) | *Death Penalty Case* |
| Petitioner, | ) | |
| | ) | Case Doc. 2:25-cv-00185-KAC-JEM |
| v. | ) | |
| | ) | |
| KENNETH NELSON, Warden, | ) | District Judge Crytzer |
| Riverbend Maximum Security Institution, | ) | Magistrate Judge McCook |
| | ) | |
| Respondent. | ) | |

---

**MOTION TO SUSPEND SCHEDULING ORDER AND STAY PROCEEDINGS**

---

Petitioner Howard Hawk Willis, through undersigned counsel, moves this Court to suspend the current scheduling order (Doc. 13) and stay proceedings in light of Respondent's assertion that this case should be governed by Chapter 154 of Title 28 of the United States Code. Doc. 44 at 67, PageID #24534. Respondent has indicated through counsel that he opposes this motion.

In July, the U.S. Attorney General certified Tennessee's capital postconviction mechanism as compliant with Chapter 154. 91 Fed. Reg. 42761, 42762 (Jul. 10, 2026). This certification triggers significant changes to the procedure, time limits, and docket control afforded to district court judges and changes to substantive claims that may be brought in federal habeas. The D.C. Circuit has two cases pending that will decide preliminary questions about the applicable law in this case. First, the D.C. Circuit is considering Mr. Willis' appeal of the dismissal of his facial constitutional challenge to Chapter 154 and challenge to the authority of the U.S. Attorney General to make certification determinations. *See Bland et al. v. Blanche, et al.*, No. 26-5305

(D.C. Cir.). Second, the D.C. Circuit is currently undertaking *de novo* review of whether Chapter 154 can even apply to Tennessee capital habeas cases.

Accordingly, judicial economy and the need for this Court and the parties to know what law applies to this case support a temporary stay. Another federal district court in Tennessee recently reached the same conclusion. *Pruitt v. Nelson*, No. 2:22-CV-2855-BCL-ATC, 2026 WL 3034131, at *1 (W.D. Tenn. Sept. 24, 2026) (staying capital habeas case pending the D.C. Circuit's resolution of whether Chapter 154 applies in Tennessee) (Attachment 1). As Judge Lea noted in that case, "for the limited universe of cases pending when certification occurred, a challenge to the certification can significantly impact the analysis. Here, Respondent has invoked Chapter 154, and it would be wasteful to bifurcate proceedings so that claims and defenses are resolved first under the pre-Chapter 154 standard and then, second and if necessary, under the Chapter 154 standard." *Id.*

## I. Procedural background

Petitions for the writ of habeas corpus challenging a state capital judgment are typically governed by Chapter 153 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2241 et seq. Title 28, however, also includes a separate framework that—if certain preconditions are met—may instead govern capital habeas petitions arising from state convictions and death sentences. Those provisions are codified at Chapter 154. *See* 28 U.S.C. §§ 2261–2266.

Chapter 154 was designed to "establish[] a quid-pro-quo relationship" between a state and an individual habeas petitioner. *Bennett v. Angelone*, 92 F.3d 1336, 1342 (4th Cir. 1996).[1] The theory underlying Chapter 154 is that if a state ensures that an indigent capital post-conviction petitioner is represented in post-conviction by qualified, timely appointed, fairly compensated, and adequately resourced counsel, that petitioner may later be subject to Chapter 154's restrictions on capital federal habeas review. *Id.* Examples of Chapter 154's curtailment of federal habeas rights include shortening the limitations period for filing a petition from one year to 180 days, restricting review of procedurally defaulted claims and amendments to the petition, and requiring district courts to reprioritize their dockets to give Chapter 154 cases precedence over all non-capital cases and decide them on a fast-track. 28 U.S.C. §§ 2244(d)(1), 2263(a), 2264(a), 2266(a)–(b).[2] In sum, Chapter 154 "change[s] standards of proof and persuasion in a

[1] Congress enacted Chapter 154 as part of AEDPA to provide a "quid pro quo arrangement under which states are accorded stronger finality rules on federal habeas review in return for strengthening the right to counsel for indigent capital defendants." H.R. Rep. No. 104-23, at 10 (1995). Congress passed Chapter 154 based on recommendations of the Ad Hoc Committee of the Judicial Conference on Federal Habeas Corpus in Capital Cases ("Powell Committee"). *See* Effective Death Penalty Act of 1995, Antiterrorism and Effective Death Penalty Act of 1996, Committee on the Judiciary Report, H.R. Rep. No. 104-23 (1995), 1995 WL 56412, *8 ("Committee on the Judiciary Report"); *see also Ashmus v. Woodford*, 202 F.3d 1160, 1163 (9th Cir. 2000) (recognizing that Chapter 154 "essentially codifies" the Powell Committee Report).

[2] For example, Respondent asks this Court to apply Chapter 154's strict limitations to procedural default. Doc. 44 at 70, PageID #24537. Under Chapter 153, procedural default is a judge-created doctrine that may be excused if a petitioner demonstrates cause and prejudice, or if a court's failure to address a claim will result in a fundamental miscarriage of justice. *See Hughbanks v. Hudson*, 2 F.4th 527, 535 (6th Cir. 2021). Respondent seeks to limit the Court's review to the exceptions listed in § 2264(a), including whether the default was (1) "the result of State action in violation of the Constitution or laws of the United States," (2) "the result of the Supreme Court's recognition of a new Federal right that is made retroactively applicable," or (3) "based on a factual predicate that could not have been discovered through the exercise of due diligence in time to present the claim for State or Federal post-conviction review." Respondent contends that Chapter 154 thereby limits Mr. Willis' ability to assert claims that would otherwise be excused under Chapter 153.

way favorable to a State, [and] the statute goes beyond 'mere' procedure to affect substantive entitlement to relief." *Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Chapter 154 may apply to an individual capital habeas case only if two preconditions are met. First, the U.S. Attorney General must certify a state pursuant to 28 U.S.C. § 2261(b)(1) and § 2265(a) as potentially eligible to rely on Chapter 154 in individual cases. Second—if the respondent invokes Chapter 154—the district court considering the habeas petition at issue must determine whether the state's offer of counsel and administration of the certified mechanism of representation met the requirements of 28 U.S.C. § 2261(b)(2) and (c). 28 U.S.C. § 2261(a) (Chapter 154 applies "only if the provisions of subsections (b) and (c) are satisfied"). The Respondent carries the burden of proving the applicability of Chapter 154 to an individual case. *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (holding that invoking the procedures of Chapter 154 constitutes an affirmative defense employed by the state in habeas corpus proceedings); *Hunter v. Bryant*, 502 U.S. 224, 233 (1991) (government officials bear the burden of establishing their affirmative defenses); *Ashmus v. Calderon*, 31 F. Supp. 2d 1175, 1183 (N.D. Cal. 1998) ("it is entirely the states' decision whether to opt-in—by so choosing the states are properly allocated the burden of proving compliance") (citing the Powell Committee Report), *aff'd, Ashmus v. Woodford*, 202 F.3d 1160 (9th Cir. 2000).

**A. Precondition One: U.S. Attorney General's lawful certification of a state**

First, the U.S. Attorney General must certify that the state's mechanism for providing capital postconviction representation and litigation expenses is generally sufficient to raise the possibility of applying Chapter 154 in an individual case where the petitioner actually received the benefits of the certified mechanism. *See* 28 U.S.C. § 2261(b)(1). In August 2025, Tennessee's application to the U.S. Attorney General for Chapter 154 certification was published

in the Federal Register. 90 Fed. Reg. 38182–83 (Aug. 7, 2025). Mr. Willis, along with other co-plaintiffs, filed *Bland v. Bondi* in the District Court for the District of Columbia, challenging the constitutionality of Chapter 154 under Article III and the Due Process Clause of the Fifth Amendment. Complaint (Sept. 30, 2025) ECF No. 1; *see* Amended Complaint (Jan. 20, 2026) ECF No. 29. On July 10, 2026, the district court concluded that it lacked jurisdiction to decide the case on the basis that the constitutional challenges to Chapter 154 may fall under the D.C. Circuit exclusive jurisdiction over certification questions pursuant to 28 U.S.C. § 2265(c). Mr. Willis and his co-plaintiffs have appealed. *See Bland et al. v. Blanche, et al.*, No. 26-5305 (D.C. Cir.).[3]

As part of the notice and comment on Tennessee's certification application, Mr. Willis' counsel and others then submitted a 97-page administrative Comment and more than 90 exhibits in opposition to certification. In July 2026, then-acting U.S. Attorney General Blanche issued a Chapter 154 certification of Tennessee, retroactive to July 1, 1997. 91 Fed. Reg. 42761, 42762 (Jul. 10, 2026). But the Attorney General's administrative certification decision not only remains under challenge but is also merely the first step in the process of Tennessee being Chapter 154 certified, and it does not establish that Chapter 154 can apply to this case.

Rather, the process of whether Tennessee is entitled to Chapter 154 certification e is ongoing. Congress bestowed the D.C. Circuit exclusive jurisdiction to review, *de novo*, the Attorney

[3] Additional litigation challenging Tennessee's Chapter 154 certification is pending in the Chancery Court for the State of Tennessee in Davidson County. *See FDSET v. Skrmetti*, No. 26-0660-II. That litigation raises the question of whether Tennessee Attorney General and Reporter Skrmetti had authority to apply to the U.S. Attorney General for certification in the first instance or whether his actions were *ultra vires*. The Chancery Court heard argument on the defendant's motion to dismiss on October 23, 2026, but has not yet issued a ruling.

General's determination of certification for Tennessee. 28 U.S.C. § 2265(c). On September 4, 2026, Mr. Willis' counsel and others filed a petition for review of the certification. *FDSET v. Blanche*, Document #2191644, Case No. 26-1229 (D.C. Cir.). The D.C. Circuit will review the Attorney General's conclusion in light of all available evidence, "put[ting] itself in the [Attorney General's] place" and deciding the certification question "anew." *Doe v. United States*, 821 F.2d 694, 698 (D.C. Cir. 1987) (en banc) (Ginsburg, J.). The D.C. Circuit's "fresh, independent determination" of the underlying matter is not limited to or constrained by the administrative record, and the Attorney General's certification decision is accorded no deference. *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 866 (D.C. Cir. 1989) (Ginsburg, J.); *accord United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 368 (1967) (holding that when Congress prescribed *de novo* review, it intended that the reviewing court decide the underlying issue "completely and on its own," giving no "special weight to the [agency's] determination" (internal quotation marks omitted)).[4] Although a motion to stay Tennessee's certification is fully briefed before the D.C. Circuit, the D.C. Circuit has not yet issued a schedule for briefing on the merits.

**B. Precondition Two: Case-by-case determinations by district courts**

The second precondition to apply Chapter 154 to a capital habeas case requires the district court in which the petition is pending to independently determine that the petitioner in that case

[4] That review extends to the interpretive choices embedded in the certification, including its retroactive effective date, and to the 2013 regulations pursuant to which the Attorney General made it. Courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

received the benefits of the Chapter 154 *quid pro quo* promise. *See* 28 U.S.C. § 2261(b)(2)–(c). Before a District Court can apply Chapter 154, it must resolve a range of questions.

For example, this Court would have to decide two threshold questions that no federal court has previously decided. First, this Court would need to decide whether Chapter 154's provisions can be applied retroactively to a federal habeas petition that was already filed at the time of Tennessee's certification. This raises several questions of constitutional magnitude, including: (1) whether, on a provision-by-provision basis, Congress intended the retroactive application of the provisions of Chapter 154 to habeas petitions that were already pending when a state was certified; and (2) whether retroactive application runs afoul of the Suspension Clause and/or the Due Process Clause. Indeed, the Attorney General's certification of Tennessee anticipated that, "[t]o the extent any individual habeas cases present retroactivity questions, those issues may be raised to the federal courts adjudicating those petitions." 91 Fed. Reg. at 42766.

Second, this Court would need to decide, in the first instance and with no preexisting state-court adjudication of the issue, whether Mr. Willis in fact received the benefits on which Chapter 154 certification is predicated: whether the state offered Mr. Willis counsel and whether the state provided competent, adequately resourced and compensated counsel provided in a timely manner in his state habeas corpus proceedings. 28 U.S.C. § 2261(b)(2)–(c); *see also* 78 Fed. Reg. 58160, 58162 (Sep. 23, 2013) ("The case-specific function of ascertaining whether counsel was appointed pursuant to the certified mechanism is reserved to Federal habeas courts, which can address individual irregularities and decide whether the Federal habeas corpus review procedures of chapter 154 will apply in particular cases."). Determining that requires answering, *inter alia*, the following questions:

(1) Whether counsel was provided to Mr. Willis in a manner that was "reasonably timely in light of the time limitations for seeking State and Federal postconviction review and the time required for developing and presenting claims in the postconviction proceedings." 28 C.F.R. § 26.21;

(2) Whether Mr. Willis's appointed counsel met competency standards for post-conviction counsel in capital cases. *See* 28 U.S.C. § 2261(b); 28 C.F.R. § 26.22(b)(2);

(3) Whether Mr. Willis's appointed counsel received adequate compensation. *See* 28 U.S.C. § 2265(a)(1)(A); 28 C.F.R. § 26.22(c); and

(4) Whether the state provided for the payment of reasonable litigation expenses of appointed post-conviction counsel. *See* 28 U.S.C. § 2265(a)(1)(A); 28 C.F.R. § 26.22(d).

Finally, this Court would be required to determine whether Mr. Willis's appointed representation was actually furnished and appointed consistently with § 2261(c).

## II. Judicial economy and the need for the Court and parties to know what law to apply in this case warrant a temporary stay.

"AEDPA does not deprive district courts" of the "authority to issue stays." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Here, both judicial economy and the need for certainty as to which set of laws applies to this case justify a temporary stay.

### A. Judicial economy

The parties and the Court would need to expend time and resources in what is sure to be extensive litigation about (1) whether Chapter 154 and the Attorney General's authority to certify states are constitutional; (2) whether Chapter 154 can constitutionally be retroactively applied to this case; (3) whether the second precondition for applying Chapter 154 has been met (whether

Mr. Willis received the benefits of the *quid pro quo*); and (4) how to interpret and apply each part of the Chapter 154 provisions. Litigation will be extensive because Tennessee is currently the only state certified under Chapter 154, and Chapter 154's procedures and substance have never been applied to a single case in any jurisdiction, such that virtually every issue raised will be one of first impression. *See* 91 Fed. Reg. 12525.

Since the D.C. Circuit has yet to decide whether the *first* precondition for applying Chapter 154 has even been met, litigating these issues now is premature. The D.C. Circuit's pending consideration of the *Bland* appeal *de novo* review of the Attorney General's certification determination could render these issues moot. The course that best promotes judicial economy is for this Court to defer those questions until and unless the D.C. Circuit decides the constitutionality of the Attorney General's authority under Chapter 154 and approves Tennessee's certification. Proceeding now would invite bifurcated litigation that "would be wasteful." *See Pruitt*, 2026 WL 3034131, at *1 (W.D. Tenn. Sept. 24, 2026). A stay of proceedings is appropriate as a matter of judicial economy.

**B. The need to know which set of laws applies to this case**

The D.C. Circuit's decisions as to the constitutionality of Chapter 154 and the correctness of Tennessee's certification will give guidance to this Court and to the parties as to the correct legal standard for reviewing Mr. Willis' petition: Chapter 153 or Chapter 154. Indeed, the "challenge to [Tennessee's] certification can significantly impact the analysis" of a case in which Chapter 154 is invoked. *Pruitt*, 2026 WL 3034131, at *1. It would be an avoidable waste of time and resources to undergo extensive litigation only to later learn that the D.C. Circuit did not uphold the Attorney General's certification or constitutional authority, and that Chapter 154 was never potentially applicable in Tennessee.

For example, Respondent asserts that ten of Mr. Willis's claims are procedurally defaulted. Doc. 44 at 99, PageID #24566 (Claim 3); *id.* at 131, PageID #24598 (Claim 10); *id.* at 213, PageID #24680 (Claim 15); *id.* at 220, PageID #24687 (Claim 16); *id.* at 224, PageID #24691 (Claim 17); *id.* at 207, PageID #24674 (Claim 18); *id.* at 225, PageID #24692 (Claim 19); *id.* at 239, PageID 24706 (Claim 22); *id.* at 247, PageID #24714 (Claim 23); *id.* at 254, PageID #24721 (Claim 26). Without knowing whether Chapter 153 or Chapter 154 applies, neither party can brief the Court accurately and efficiently on the correct procedural default analysis. To brief these issues without guidance from the D.C. Circuit would be "wasteful," especially in light of the "significant[] impact" posed by the D.C. Circuit's ultimate decision. *Pruitt*, 2026 WL 3034131, at *1.

Pursuant to the Scheduling Order in this case, Mr. Willis's Reply to the Answer is due on December 29, 2026. Doc. 10 at 2, PageID #155. Motions for discovery will be due by March 29, 2027, with briefing for dispositive motions due within ninety days from the close of discovery. Doc. 10 at 2–3, PageID #155–56. The parties face the possibility of briefing numerous claims under two distinct sets of statutes. A stay of proceedings is appropriate to ensure that the parties and the Court know and apply the correct laws in this case.

**III. A stay is an appropriate exercise of discretion where guidance from a controlling authority is forthcoming.**

Finally, a stay is an appropriate exercise of discretion where a binding decision from controlling authority is forthcoming and will resolve a fundamental dispute preventing full adjudication. This is not the first time courts in this circuit have held habeas petitions in abeyance pending guidance from another court. In *In re Embry*, the Sixth Circuit directed district courts to hold hundreds of habeas petitions "in abeyance pending the Supreme Court's

decision" in a case that had only just been granted certiorari. 831 F.3d 377, 382 (6th Cir. 2016) (citing *Beckles v. United States*, 579 U.S. 927 (2016)); *accord Blow v. United States*, 829 F.3d 170, 172 (2d Cir. 2016) (instructing the lower court to hold the habeas petition in abeyance awaiting *Beckles*); *see also Starling v. Johnson*, 117 F.3d 1417, 1997 WL 336247, at *1 (5th Cir. 1997) (ordering habeas briefing in abeyance pending the decision of another panel).

In *In re Embry*, the petitioner sought to vacate his sentence based on a Sixth Circuit decision that had interpreted Supreme Court precedent as retroactively "invalidat[ing] the Sentencing Guidelines' residual clause." 831 F.3d at 378. At the time of the petition, the Supreme Court had not yet expressly countenanced this extension. *Id.* The Supreme Court had, however, "agreed to resolve the point next Term[.]" *Id.* As the Sixth Circuit recognized, the forthcoming decision would resolve the major questions underpinning the petitioner's claims: "Does the vagueness doctrine apply to the advisory Sentencing Guidelines? If so, is that a new rule or one dictated by *Johnson*, and does the decision apply retroactively? Through it all, does the Court's decision resolve, or help to resolve, the lurking statute of limitations question?" *Id.* at 382.

Rather than reaching a decision that could be invalidated by the Supreme Court's forthcoming decision, the Sixth Circuit reasoned "it makes the most sense to grant the gatekeeping motions, send the cases to the district courts, and ask the district courts to hold the cases in abeyance pending the Supreme Court's decision in *Beckles*. After the Supreme Court resolves some or (hope springs eternal) all of these questions, the district courts will be well positioned to handle these cases fairly and efficiently." *Id.* In all, the court ordered hundreds of habeas cases to be held in abeyance in the lower courts pending the Supreme Court's decision. *See id.* at 382 ("By granting such a motion, even many such motions (roughly 1700 *Johnson* motions have been filed in our circuit), we decide nothing with finality.").

The logic of *In re Embry* applies with equal, if not greater, force here. Just as *Beckles* was poised to answer the questions preventing full adjudication in *In re Embry*, so too is the D.C. Circuit poised to answer questions critical to this Court's review of Mr. Willis' petition. Most significantly, ten of Mr. Willis' twenty-six claims may be subject to a different legal standard for procedural default under Chapter 154 than under Chapter 153. The D.C. Circuit will decide whether those limits may even apply here. Moreover, the D.C. Circuit's decision will also determine whether this Court's management of this case will need to account for discovery and presentation of evidence in support of the novel questions of Chapter 154 eligibility raised by 28 U.S.C. § 2261(b)(2) and (c).

## CONCLUSION

For the foregoing reasons, Mr. Willis moves this Court to stay proceedings pending resolution of the D.C. Circuit's review of Tennessee's certification under Chapter 154.

Respectfully submitted,

BY: */s/ Emily Elison*

Emily Elison, OR Bar Number 103800
Assistant Federal Defender
FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.
800 South Gay Street, Suite 2400
Knoxville, Tennessee 37929
Telephone: (865) 637-7979
Fax: (865) 637-7979
emily_elison@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion has been served on counsel for Respondent, Assistant Attorneys General William J. True and John H. Bledsoe, by electronic case filing via the PACER CM/ECF system on November 6, 2026.


BY: *<u>/s/ Emily Elison</u>*
Emily Elison, OR Bar Number 103800
Assistant Federal Defender
FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.
800 South Gay Street, Suite 2400
Knoxville, Tennessee 37929
Telephone: (865) 637-7979
Fax: (865) 637-7979
emily_elison@fd.org