UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HOWARD HAWK WILLIS,<br><br>Petitioner,<br><br>v.<br><br>KENNETH NELSON, Warden,<br>Riverbend Maximum Security Institution,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | *Death Penalty Case*<br><br>Case No. 2:25-cv-00185-KAC-JEM<br><br>District Judge Crytzer<br>Magistrate Judge McCook |

---

**REPLY IN SUPPORT OF**
**MOTION TO SUSPEND SCHEDULING ORDER AND STAY PROCEEDINGS**

---

Judicial economy supports a temporary stay pending resolution of the D.C. Circuit's review of Tennessee's certification pursuant to Chapter 154. Respondent's opposition only reinforces the reasons why a stay is necessary.

The D.C. Circuit's decision as to the constitutionality of Chapter 154 and the correctness of Tennessee's certification will give guidance to the parties and to this Court as to the correct legal standards to apply in reviewing Mr. Willis's petition: the provisions of Chapter 153 or of Chapter 154. This matters because Chapter 154 "change[s] standards of proof and persuasion in a way favorable to a State, [and] the statute goes beyond 'mere' procedure to affect substantive entitlement to relief." *Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Respondent's solution is for this Court to ignore Chapter 154—despite Respondent's invocation of it—unless and until Mr. Willis demonstrates cause and prejudice to excuse procedural default of claims under the provisions in Chapter 153. *See* Doc. 46 at 5, PageID #24745 (Opposition). Then, Respondent will ask this Court to address those claims for a *second* time

under Chapter 154. *Id.* Respondent is asking for two bites at the apple: If he does not succeed under Chapter 153, then he will ask for a chance to succeed under Chapter 154. Respondent's desire for two chances to defeat claims on procedural default grounds would require briefing and reviewing ten claims twice over under two different standards of review. Respondent's request to bifurcate the review of claims triggers the exact efficiency issue warned of by the district court in *Pruitt*: "[I]t would be wasteful to bifurcate proceedings so that claims and defenses are resolved first under the pre-Chapter 154 standard and then, second and if necessary, under the Chapter 154 standard." *Pruitt v. Nelson*, No. 2:22-CV-2855-BCL-ATC, 2026 WL 3034131, at *1 (W.D. Tenn. Sept. 24, 2026)). Indeed, holding this case in abeyance is consistent with the Sixth Circuit's practice when the application of procedural rules to the case at bar depends on the outcome of other litigation. *See In re Embry*, 831 F.3d 377, 382 (6th Cir. 2016) (ordering district court to hold proceedings in abeyance to permit the U.S. Supreme Court to provide guidance on appropriate law to be applied).

Accordingly, for the reasons that follow, and for the additional reasons addressed in his initial motion, this Court should grant Mr. Willis's motion to stay.

## I. Judicial economy supports a stay.

The "challenge to [Tennessee's] certification can significantly impact the analysis" of a case in which Chapter 154 is invoked. *Pruitt*, 2026 WL 3034131, at *1. If the U.S. Attorney General's certification of Tennessee as Chapter 154-eligible survives *de novo* review in the D.C. Circuit, it will affect this Court's adjudication of the pending petition in three broad ways.

First, this Court will need to resolve a fleet of legal and factual questions—never previously addressed by any court and therefore not appropriate for consideration on the record alone—regarding whether Chapter 154 can actually be applied in this specific case. *See* 28 U.S.C. § 2261(b)–(c). Far from having a "minimal impact" or only affecting the question of procedural

default, the prospect of applying Chapter 154 will require extensive briefing as to how the state post-conviction mechanism applied (or in fact, did not apply) to this case in order for this Court to answer questions of law and fact that no federal court has previously decided. Doc. 46 at 2, PageID #24742; *see also* Doc. 45 at 6–8, PageID #24731–33 (Motion) (describing the novel inquiry).

Second, if this Court finds that Chapter 154 can be applied in this case as a general matter, the parties will brief and this Court will need to determine on a provision-by-provision basis whether Congress intended (and the Constitution permits) each relevant provision of Chapter 154 to retroactively curtail the rights of a petitioner who acted in reliance on Chapter 153's provisions prior to certification. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (noting that "the presumption against retroactive legislation is deeply rooted in our jurisprudence and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.") (footnote omitted).

Third, if those two multi-pronged processes are complete, the parties will brief the applicable claims, and this Court must decide the individual claims pleaded under the substantive and procedural frameworks unique to Chapter 154. The changes to habeas substance and procedure wrought by Chapter 154 are numerous and will pervasively dictate the standards on which this Court will have to rely. For example, both Mr. Willis and Respondent agree that Chapter 154 alters the substance of the procedural default analysis of ten of Mr. Willis's claims. *See* Doc. 45 at 3 n.2, PageID #24728; Doc. 46 at 5, PageID #24745.

In contrast, if this Court allows the D.C. Circuit litigation to proceed while this case is stayed, and that litigation ultimately sets Tennessee's certification aside, then all of those inquiries can be avoided.

Respondent seeks to have his cake and eat it, too, by invoking Chapter 154 while simultaneously suggesting that this Court will not actually have to devote any time or analysis to that invocation. But Respondent's proposed solution—simply putting off all of the complex analyses that Chapter 154 requires in favor of "addressing the amended petition outside of Chapter 154" and hoping that that will be enough, Doc. 46 at 3, PageID #24743, would only render this Court's task more time-consuming, resource-intensive, and complex. Unless the Respondent successfully convinces this Court to apply Chapter 153 to foreclose relief on *every single issue* presented by Mr. Willis' petition, then Chapter 154 and all of its challenges would still be waiting for this Court at the end.

## II. If Respondent wishes to proceed under Chapter 153, the appropriate course of action is to waive reliance on Chapter 154.

In any event, Respondent does not explain how Respondent's bifurcated approach can be squared with the text of Chapter 154 and its prioritization provisions. If Chapter 154 actually applies to this case—as Respondent insists that it does—then, according to the plain language of the statute, the adjudication of Mr. Willis' petition must "be given priority by the district court . . . over all noncapital matters." 28 U.S.C. § 2266. Respondent fails to explain how the statute, as written, permits this Court to ignore the prioritization edict and instead perform a full Chapter 153 analysis of the case first.[1] It is well within this Court's ordinary powers to stay consideration of the case altogether while awaiting action from the D.C. Circuit. Respondent's alternative approach of asking the Court to move forward but simply ignore Chapter 154 for an indefinite period of time is contrary to Chapter 154 itself and to Respondent's invocation of its provisions.

[1] Chapter 154's prioritization and timing provisions raise serious constitutional questions about their compatibility with Article III. Respondent, however, has given no indication that he considers those provisions unconstitutional, nor has Respondent waived his right to rely upon mandamus to enforce those provisions. *See* 28 U.S.C. § 2266(b)(4)(B).

If Respondent truly wishes to proceed immediately under Chapter 153, the correct course of action is to waive reliance on Chapter 154 altogether. Respondent's actions in this litigation confirm that such waiver is permissible. Respondent has already elected not to "assert[] a timeliness argument under" Chapter 154 against Mr. Willis. Answer, Doc. 44 at 2. It was Respondent's prerogative to do so: Nothing about Chapter 154 requires a respondent to rely on its provisions. Such a waiver, though, should be clear and irrevocable. Respondent's preferred approach to the rest of Chapter 154—whereby this Court would proceed as if Chapter 154 had been waived, only to resurrect its provisions if the results of that quasi-waiver are not to Respondent's liking—would be unfair, contrary to established practice, contrary to the text of Chapter 154, and highly wasteful of this Court's resources.

## III. A stay is an appropriate exercise of this Court's discretion.

Finally, as the Sixth Circuit has instructed, a stay is an appropriate exercise of discretion in these circumstances. *In re Embry*, 831 F.3d at 382; *accord Blow v. United States*, 829 F.3d 170, 172 (2d Cir. 2016); *see also Starling v. Johnson*, 117 F.3d 1417, 1997 WL 336247, at *1 (5th Cir. 1997). Respondent offers no response to this authority. Doc. 46 at 3–4, PageID #24743–44. The D.C. Circuit is poised to answer questions critical to this Court's review of Mr. Willis' petition. Most significantly, ten of Mr. Willis' twenty-six claims may be subject to a different legal standard for procedural default under Chapter 154 than under Chapter 153. As *In re Embry* instructs, a stay is an appropriate use of discretion while awaiting guidance necessary for resolving a habeas petition.

## CONCLUSION

For the foregoing reasons, Mr. Willis moves this Court to stay proceedings pending resolution of the D.C. Circuit's review of Tennessee's Chapter 154 certification.

Respectfully submitted,

BY: */s/ Emily Elison*

Emily Elison, OR Bar Number 103800
Assistant Federal Defender
FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.
800 South Gay Street, Suite 2400
Knoxville, Tennessee 37929
Telephone: (865) 637-7979
Fax: (865) 637-7979
emily_elison@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this motion has been served on counsel for Respondent, Assistant Attorneys General William J. True and John H. Bledsoe, by electronic case filing via the PACER CM/ECF system on November 20, 2026.

BY: */s/ Emily Elison*

Emily Elison, OR Bar Number 103800
Assistant Federal Defender
FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.
800 South Gay Street, Suite 2400
Knoxville, Tennessee 37929
Telephone: (865) 637-7979
Fax: (865) 637-7979
emily_elison@fd.org